744 So.2d 192 (1999)
Mark Stanley MEDICUS and Kathy Diane Dowden Medicus, Plaintiffs-Appellants,
v.
Nathaniel Jack SCOTT, Defendant-Appellee.
No. 32,326-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*193 Mills, Timmons & Flowers by George H. Mills, Jr., Shreveport, Counsel for Appellants.
*194 Blanchard, Walker, O'Quin & Roberts by Stacey D. Williams, Shreveport, Counsel for Appellee.
Before NORRIS, C.J., and STEWART and KOSTELKA, JJ.
NORRIS, Chief Judge.
Mark and Kathy Mark Medicus appeal the dismissal of their possessory/ petitory action against two sets of defendants. Nathanael and Melba Scott,[1] who own the adjacent property, obtained a summary judgment. Samuel and Norma Scott, who previously owned both tracts and were Medicus's vendors, successfully urged an exception of res judicata. Nathanael has also answered the appeal, seeking damages for frivolous appeal. For the reasons expressed, we affirm.

Factual and procedural background
Prior to 1983, Samuel Scott owned all of Lot 3, Four Winds Subdivision, situated on the east side of Linwood Avenue in Shreveport. Lot 3 is slightly over three acres. In January 1983, Samuel sold his brother Nathanael a portion of Lot 3, specifically described as follows:
West three hundred feet of Lot Three, * * * less and excluding the West 150 feet fronting on Linwood, and also less and except the north 30' dedicated for private driveway.
A correction deed executed in December 1983 repeated this description but added, "and also less and except the South ten (10) feet thereof."
Several years later, in June 1992, Samuel sold the balance of Lot 3 to the plaintiffs, Mark and Kathy Medicus. This deed conveys Lot 3,
LESS AND EXCEPT The West three hundred feet (300') of said Lot Three, and also less and except the north thirty feet (30') from Linwood * * * and this said thirty feet shall be dedicated for a private driveway for persons residing on the original Lot 3, and less the south ten feet thereof[.]
Medicus alleged that before he bought the property, Samuel's wife Norma visually pointed out where she thought the boundary lay between the two portions of Lot 3; and that after the sale, Nathanael built a chain link fence on the visual boundary line. He also alleged that he and Nathanael agreed at the time that this was in fact the boundary.
In February 1996, however, Nathanael staked out a new fence line some 25 feet east of the old fence (encroaching Medicus's property) and began setting out fence supplies. Medicus filed the instant suit, a possessory action, against Nathanael in August 1996. Nathanael answered and converted the case to a petitory action, claiming valid title from his brother Samuel.
Nathanael then moved for summary judgment, arguing in essence that both his own and Medicus's titles establish that the boundary is the proposed new fence line. Along with affidavits and copies of the deeds, Nathanael attached a survey showing that the boundary actually lies 22-25 feet east of the existing fence. In a memorandum, he argued that Samuel was the parties'"common author" under La. C.C.P. art. 3653, and that all titles from Samuel agree on the exact location of the boundary.
In January 1998, Medicus amended his petition to join his vendors, Samuel and Norma, as defendants. He alleged that he was subrogated to Samuel's right to have the court judicially fix the proper boundary, and that Samuel had misrepresented the true dimensions of the tract he sold. Without restyling his suit as a boundary action, he prayed for judgment fixing the boundary at the location of the existing *195 fence, and alternatively for $30,000 in damages.
Samuel responded with an exception of res judicata.[2] He alleged that shortly after Medicus purchased the land, he sued Samuel in quanti minoris, claiming drainage defects and other vices in the property. In June 1993, however, they had settled that suit for a reduction of purchase price of approximately $8,500. The receipt and release, dated June 25, 1993, released and forever discharged Samuel "from any and all actions, causes of actions, claims, demands, contractual or tortious damages, or loss by reason of or arising out of the sale" of Medicus's portion of Lot 3. This document further averred, "I have no other or further claims arising out of the above incidents."[3] This release resulted in a dismissal of the suit without prejudice in July 1993.
Nathanael's motion for summary judgment and Samuel's exception of res judicata were submitted in June 1998; there was no hearing. The District Court prepared a concise written ruling, first addressing the summary judgment. Because Nathanael had converted the suit to a petitory action, he bore the burden of proving he acquired ownership from a previous owner. The applicable deeds, filed as summary judgment evidence, showed that both Medicus and Nathanael acquired title from the same vendor, Samuel, so Samuel is presumed to be the previous owner. La. C.C.P. art. 3653. The court further found that a map filed by Medicus in opposition to the motion did not create any genuine issue of material fact; in short, the summary judgment evidence "clearly indicates that the first 300 feet of land proceeding from Linwood Avenue was already sold and therefore not available to Medicus." The court therefore granted Nathanael's summary judgment.
On the exception of res judicata, the court cited Medicus's prior action in quanti minoris against Samuel; this had been settled by receipt and release and the suit dismissed without prejudice. The court quoted the language of the release and found it broad enough to encompass the instant action. The court therefore sustained the exception.
The court's ruling was reduced to judgment dismissing all claims against the defendants. Medicus has appealed devolutively. As noted, Nathanael has answered the appeal, seeking damages for a frivolous appeal.

Discussion
By his first assignment of error Medicus urges the District Court erred in granting Nathanael's motion for summary judgment. In brief he concedes that judgment was proper to dismiss the original claim, a possessory action, as well as the issues "implicit in the petitory action urged by Nathanael Scott." Br., 4-5. He argues, however, that the summary judgment did not and could not address the issues raised by his supplemental and amending petition, viz., "the alternative allegations and remedies regarding the correction of the instruments." The thrust of the argument is that all parties erroneously believed the true boundary was where the original fence was located; surveys proved them wrong, and he is entitled to a judgment that reforms his deed to conform to the parties' original understanding.
Appellate review of summary judgments is de novo, utilizing the same criteria that guide the District Court. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152. Even assuming that Medicus's amended petition alleged a boundary action, his argument is unavailing. La. C.C.P. art. 3693 provides:

*196 After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. (Emphasis added.)
In short, Nathanael converted the suit to a petitory action, thus assuming the burden of proving that he acquired ownership from a previous owner. La. C.C.P. art. 3653. Medicus concedes in brief that by appropriate summary judgment evidence, Nathanael met this burden. Since the documentation establishes that Nathanael's title extends 25 feet east of the existing fence, as a matter of law he is entitled to judgment fixing the boundary there. Any further claim for a boundary action is superseded by the finding of title.
Further, the claim for a reformation of instruments is groundless. The law is well established that either party to a contract is permitted to correct any error in an instrument purporting to evidence the contract, so to make it express truly and correctly the intention of the parties. See, e.g., Greer v. State, 616 So.2d 811 (La.App. 2 Cir.1993), and citations therein. The party seeking to prove mutual error must do so by clear and convincing evidence. Succession of Jones v. Jones, 486 So.2d 1124 (La.App. 2 Cir.), writ denied 489 So.2d 249 (1986). Simply put, there is no contract whatsoever between Medicus and Nathanael, and thus nothing to reform between these parties. This argument lacks merit.
By his second assignment Medicus contests the finding of res judicata. He concedes the existence of the prior lawsuit and the settlement, but contends that this resulted only in a dismissal without prejudice, and covered only the redhibitory issues raised therein. He contends that the settlement regulated only the differences "which appear to be clearly comprehended by the intention of the parties," La. C.C. art. 3073, and not the boundary claim. Ortego v. State, 96-1322 (La.2/25/97), 689 So.2d 1358.
On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. Since the instant exception of res judicata was raised before the case was submitted, and evidence was received from both sides, the standard of review is manifest error. Ortego v. State, supra; Tarver v. Oliver H. Van Horn Co., Inc., 591 So.2d 1366 (La.App. 4 Cir.1991), writ denied 594 So.2d 891 (1992). Public policy favors compromises and the finality of settlements. Brown v. Drillers Inc., 93-1019 (La.1/14/94), 630 So.2d 741; Rivett v. State Farm Fire & Cas. Co., 508 So.2d 1356 (La.1987).
The District Court considered the record in the prior lawsuit, particularly the release. By this document Medicus obtained an $8,500 reduction of the purchase price; discharged Samuel from "any and all actions, causes of actions, claims, demands, contractual or tortious damages, or loss by reason of or arising out of the sale" of the property; and declared he had "no further claims." The court obviously considered the opposing evidence: a judgment without prejudice, and Medicus's affidavit that he did not intend to settle all claims. Given the broad terms of the release, the quality of the contrary evidence, and the policy to honor settlements, we cannot say the District Court was plainly wrong in finding that the instant claim is barred by res judicata.
Moreover, a party is obligated to assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation. La. C.C.P. art. 425 A. The failure to raise a claim that arises from the transaction or occurrence amounts to a waiver of that claim. Ensenat v. Edgecombe, 97-2239 (La.App. 4 *197 Cir. 3/11/98), 707 So.2d 1059, writ not considered 98-1188 (La.6/19/98), 719 So.2d 473. The transaction or occurrence giving rise to this claim was the sale from Samuel to Medicus; the prior lawsuit, which claimed redhibition but not a boundary dispute, apparently waived the latter. The judgment sustaining the exception will be affirmed.
By answer, Nathanael requests damages for frivolous appeal. La. C.C.P. art. 2164. Medicus's position, he contends, is that the "mere existence" of a claim can preclude the defendant from obtaining a summary judgment, and this is a patently incorrect statement of the law. He also urges that counsel's conductparticularly in filing an appellate brief that contains no new research but merely reprints portions of his pretrial filingsshows that the appeal was taken solely for delay and without the support of serious legal questions.
Appeals are favored by the law and appellate courts are reluctant to impose damages for frivolous appeals. City of Ruston v. Perritt, 30,896 (La.App. 2 Cir. 9/23/98), 718 So.2d 1044. Article 2164 is penal in nature and must be strictly construed. Joyner v. Wear, 27,631 (La.App. 2 Cir. 12/6/95), 665 So.2d 634, writ denied 96-0040, 96-0042 (La.2/28/96), 668 So.2d 370. An appeal is deemed frivolous only if it does not present a substantial legal question or if it is obviously taken solely for the purpose of delay or in circumstances showing that appealing counsel does not seriously believe in the position he advocates. City of Ruston v. Perritt, supra.
We agree that since the appeal was taken, some of plaintiff's counsel's conduct has been dilatory.[4] We also agree that the position taken with respect to Nathanaelconceding the validity of his petitory action but still maintaining that a boundary action may be hadis meritless, and very nearly an argument that competent counsel could not seriously advance. However, given the lack of jurisprudence on this particular point, and the courts' traditional antipathy to summary judgments,[5] we cannot say the argument is so vacuous as to warrant damages for frivolous appeal. The claim is therefore denied.

Conclusion
For the reasons expressed, the judgment is affirmed. Appellate costs are assessed to Mark Medicus and Kathy Diane Dowden Medicus.
AFFIRMED.
NOTES
[1] This defendant is referred to in the caption as "Nathaniel" Scott. Though not originally named as a defendant, Melba Tanner Scott joined in Nathanael's answer and motion for summary judgment.
[2] He also filed an exception of prescription, which the District Court did not address.
[3] Though not attached to Samuel's exception, the receipt and release was "entered into the record of this proceeding." R.p. 108. The District Court supplemented the appellate record by per curiam order of May 3, 1999.
[4] Appellant's counsel received a 30-day notice pursuant to URCA Rule 2-8.6 on March 2, 1999 because his original brief was not filed on time. Counsel also filed two objections to the District Court's order supplementing the appellate record, and was late filing his reply brief, but these address the exception of res judicata, not the summary judgment.
[5] Significant changes to the summary judgment law in 1996 and 1997 now state that the procedure is favored and intended to secure the just, speedy, and inexpensive determination of every action allowed by law. See, Mark Tatum and William Norris III, Summary Judgment and Partial Summary Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131 (1998).